TEXACO PUERTO RICO, INC., Plaintiff and Appellant, v. JUAN GONZÁLEZ RODRÍGUEZ and/or YUYO GONZÁLEZ, INC., Defendants and Appellees.

No. R-64-87.      Decided June 26, 1968.

*Beverley, Rodríguez & Reichard* for appellant. *Carlos E. Colón* for appellees.

Second Division composed of Mr. Justice Hernández Matos, as Chief Judge of Division, Mr. Justice Santana Becerra, Mr. Justice Dávila, and Mr. Justice Torres Rigual.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

(1) By deed of August 14, 1957, executed before Notary Rafael Rodríguez Lebrón, Rafael Fabián Soto and his wife, Irma Mariani Peralta, leased to appellant, Texaco Puerto Rico, Inc., a real property consisting of a 2,000 square meter lot situated on highway No. 10 from Arecibo to Utuado and a reinforced concrete and concrete-block building situated thereon. The lessors and owners of this property, had established on this immovable lot and building, and were operating a gasoline service station. The term of the lease was ten years and it expressly covered the gasoline station in operation on the leased property, including the structures and equipment devoted to said business.

It was specifically agreed that Texaco could install, fix or bury any kind of equipment, devices, tools, apparatus, or any other object such as pumps, tanks, hydraulic hoisters, compressors, sign posts, ramps and stands on the leased property. These objects were not considered to be incorporated

to the leased property and they could be removed by the lessee without any obligation on its part to pay any sum whatsoever. The lessee reserved the right to sublease or to assign the lease contract, and it was agreed that the conditions of said contract would be binding on the parties and their successors and assignees. It was agreed that the lease could be recorded in the Registry of Property, and actually, on September 30, 1957, it was recorded in the Registry of Property of Utuado, the property being subject to an existent mortgage for the amount of $5,000 in favor of the lessee, Texaco. The lease rental was $50 monthly.

(2) On the same date, August 14, 1957, the lessors and lessee signed a contract before the same notary Rafael Rodríguez Lebrón, by virtue of which lessee Texaco subleased the same property to lessors spouses Fabián Mariani. This sublease was made for a term of 9 years 11 months and for a rental of $50 monthly. It was agreed by the sublessee that all the machinery and equipment located on the property, which belonged to the sublessor Texaco, and those which would be installed in the future would belong exclusively to the latter. The sublessee agreed to use said property and equipment for the operation of a gasoline service station, and the sale of auto parts and accessories, auto washing and lubricating, binding himself to sell in said gasoline station preferably the oil products distributed by Texaco. He bound himself also to keep posted in the gasoline station the advertisements of the Texaco products and to permit the latter to install on said property any advertisement or poster to that effect. Texaco reserved the right to inspect the service station to improve its appearance and the service rendered.

(3) The property leased to Texaco subsequently passed to several owners and finally to Miguel Torres Frau and his wife María E. Maldonado, who acquired it in the year 1962.

(4) By deed No. 1 of January 24, 1963, and before Notary Carlos E. Colón, Torres Frau and his wife leased

said property to Yuyo González, Inc., including the gasoline station in operation which the owners and lessors were operating on the property, with all its uses, accessories, structures, and equipment used for said business.

(5) The record shows, and it was so concluded by the trial court, that the persons who acquired the property subsequent to Fabián Soto, the original owner and lessor, continued to operate the gasoline station under the terms of the private contract of August 14, 1957 executed by Texaco and Fabián Soto coetaneously with the lease.

(6) Prior to the execution of the foregoing lease between the present owners Torres Frau and Yuyo González, Inc., Torres Frau requested permission from Texaco, by letter of November 26, 1962, to sublease the gasoline station to Yuyo González, Inc., under the same conditions of the sublease contract with Texaco. By letter of the same date Texaco answered that it had no objection to said transaction provided González, Inc., agreed to comply with the clauses of its sublease contract with said company. This condition imposed on the lessee and sublessee González, Inc., is not mentioned in the lease to González.

(7) On May 3, 1963 González, Inc., addressed a letter to Texaco notifying the latter that its intention was to discontinue the purchase of gasoline from Texaco for the reasons which it stated, and requested it to remove, within a reasonable term, the gasoline pumps located therein, property of Texaco. The discrepancy arose apparently as a result of certain changes which González required to be made on the property at the expense of Texaco, and which Texaco refused to do. In said letter of May 3, 1963 Texaco is warned that if it does not remove the gasoline pumps within a period of 10 days, González, Inc., would remove them at the expense of the former. On the eighth of said month of May, Texaco filed the present complaint for possessory injunction.

The trial court dismissed the complaint. It correctly rejected defendant-appellee's contention to the effect that the lease and sublease contracts of August 14, 1957 were simulated contracts. In the light of the covenants and agreements of said contracts and considering their purpose, such contracts were not simulated, since, as the court correctly points out, they did not contain a declaration deliberately discordant with the intention of the parties, agreed between the parties, and for the purpose of deceiving others.

Dismissing the complaint the trial court stated the following as its conclusions of law:

"In our law a lessee may exercise the possessory injunction, but it is assumed that he is the material possessor of the thing, that is, that he has the immediate possession. The mediate or direct possession[1] is that of the owner and possibly that of the lessee in relation to the sublessee who, although they do not possess materially the thing, do not forfeit the possession of their right.

"We consider we would be extending the complex concept of possession too far if we would conclude that this is a case of mediate possession[1] protected by the present possessory injunction.

"There is no doubt that plaintiff has remedies in our laws to protect rights which, as owner, he has over the equipment installed in the property, and, as lessee, in relation to the sublease, but the possessory injunction discusses the fact of the immediate or material possession and not the mediate possession which, as has been said, is protected by other actions.

"A superior possessor (mediate possession) acknowledges the tenancy by another person and the acts contemplated in § .690, Code of Civil Procedure (32 L.P.R.A. § 3561) are intentional manifestations to disturb or to deprive the holder of the thing materially possessed."

The following are presumptions of law in this case:

(a) Section 360 of the Civil Code, 1930 ed.: "Natural possession is *the holding* of a thing or *the enjoyment of a*

---

[1] It so appears in the original.

*right* by any person. Civil possession is the *same holding or enjoyment* joined to the intent of holding the thing or right as one's own";

(b) "The possession of property and rights may be considered in one of two different aspects: either in that of the owner, or in that of the holder of the thing or right to keep and enjoy them, the ownership belonging to another person." Section 362;

(c) ". . . Any person who believes that he has a right or action to deprive another of *the holding* of a thing, shall petition the assistance of the competent authorities, provided the holder refuses to deliver up the said thing." Civil Code, § 370;

(d) "Possession, as a *fact*, cannot be recognized in two different personalities, unless in cases of indivisibility." Section 374;

(e) "Every possessor has a right to be respected in his possession; and if he be disturbed therein, he shall be protected or reinstated in such possession by the means established in the *laws of procedure*." Section 375.

In relation to §§ 370 and 375 of the Civil Code, § 690 of the Code of Civil Procedure, 1933 ed., is applied:

(f) "An injunction for the retention or recovery of material possession of real property shall be granted on petition of the interested party provided he shows to the satisfaction of the court that he has been disturbed in his possession or tenancy of said property by acts showing intention of disturbing or depriving him of such possession, or when he has already been deprived of said possession or tenancy."

The following are also applicable presumptions of law:

(g) Section 1439 of the Civil Code: "With regard to third persons, leases of real property, which are not duly recorded in the registry of property, shall be of no effect";

§ 1444: "The lessor is obliged . . . 3. To maintain the lessee in the peaceful enjoyment of the lease during all the time of the contract"; § 1450: "The lessor shall not be obliged to answer for the mere fact of a trespass made by a third person in the use of the estate leased but the lessee shall have a direct action against the trespasser"; § 1461: "The purchaser of a leased estate has a right to terminate the lease in force at the time of making the sale, unless the contrary is stipulated, and the provisions of the Mortgage Law"; and § 1472: "If the lessor of a house, . . . store . . . or industrial establishment, leases the furniture also, the lease of the latter shall be understood as executed for a time equal to that of the house leased."

Likewise applicable in this case:

(h) In relation to Art. 2-5th of the Mortgage Law (Contract for the lease of real property), Art. 23 of the same: "The instruments mentioned in articles 2 and 5 which are not duly recorded or entered in the registry can not prejudice third persons."

According to our § 360 of the Civil Code, the *holding* of the thing or the *enjoyment* of the right is a common element present in the natural possession as well as in the civil possession.[2]

Our Civil Code does not legislate the concepts of "mediate or indirect superior possession, and immediate or direct possession." These are descriptive concepts of possession of authors and commentators who adhere to the Germanic doc-

---

[2] Las Partidas, Castán remarks, speaking about possession, consider the possession of a right or incorporeal thing—in our case, lease right—as a *quasi-possession* or "in the manner of possession," following the Roman concept. Our § 360, like § 430 of the Spanish Civil Code from which it originates, merged the concept and did not distinguish, in the possessory institution, between corporeal and incorporeal things. It eliminated every historical difference between wrongful and natural possession, which only requires the *corpus* or the corporeal *holding*. 2 Castán, *Derecho Civil Español, Común y Foral*, 9th ed. 1957.—*La Posesión.*

trine, but which still have a place in our possessory regime. Thus, for example, the owner or proprietor who, pursuant to § 360, enjoys the superior civil possession, enjoys, as to his lessee or usufructuary, the mediate indirect possession and, the latter, as to the owner, the inferior possession or direct or immediate subpossession. The lessee has the indirect superior mediate possession as to his sublessee, who enjoys the immediate or inferior direct possession, and so forth.

Likewise § 690 of the Code of Civil Procedure copied above does not legislate the terms of the mediate and indirect possessor, and of immediate possessor. It provides the remedy for the retention or recovery of the material possession of real property, *on petition of the interested party*, provided he shows that he has been disturbed in his possession or tenancy of said property by acts showing intention of *disturbing or depriving him* of such possession, or when he has already been deprived thereof. Section 691 which follows requires complainant to allege that within the year preceding the filing of the complaint he was in the *actual possession* of the property if it is sought to recover it, and is in possession thereof if it is sought to retain it.

■ Unquestionably, this injunction proceeding of the Law of Procedure gives effect to the possessory protection established by § 375 of the Civil Code.

Our Civil Code permits the possession in different aspects —§ 362—as the *holder* of the thing to enjoy it, and as owner —the civil possession of § 360. Both concepts may concur in the same person, as would be the case of the possessor who has not surrendered the possession by lease, usufruct, or any other juridical business and there are cases where they concur in different persons. Hence, although § 1444 obliges the lessor-owner to maintain the lessee-holder in the enjoyment of the property, § 1450 does not oblige lessor to answer for the mere fact of a trespass made by a third person, but the

holder of the possession or lessee shall have a direct action against the trespasser.

■ What our civil law does not recognize is the possession, *as a fact*, in two different personalities, at the same time, unless in cases of indivisibility. Section 374.[3]

■ Confronting the facts proved with the applicable presumptions of law, plaintiff-appellant Texaco was a direct and immediate possessor as to the owner, Fabián Soto, by virtue of the lease contract of August 14, 1957. But, it happened that by virtue of the private sublease agreement of the same date, the direct immediate possession reverted to the owner to be enjoyed this time, not as its owner, but as a sublessee, this subpossession being subject to the agreements and clauses of the lease contract.

Identical situation prevailed with the subsequent holders and owners of the property who maintained the sublease relationship with Texaco agreed upon by private deed.

Texaco's lease contract, having been recorded in the registry, such contract had to be honored with its agreements and clauses, during its term of 10 years by every subsequent holder. As to Texaco, the lease contract that the last owner, Torres Frau, executed with defendant-appellee by deed of January 24, 1963, does not alter the situation in any manner Texaco not being a party thereto, insofar as Torres Frau

---

[3] Castán remarks, *op. cit.* at p. 435:

"Our most advanced doctrine generally makes room for this distinction in our Law. Where there is a person possessing, as the holder of the thing, and acknowledging the ownership in another person, there are two possessors, since the owner does not forfeit the possession of his right of ownership, although he does not possess the thing materially; and in this sense the distinction may be considered virtually admitted in our code of laws (which the German Code clearly makes in its § 868) between an *immediate or direct* possessor (*mediador posesorio*) and another *mediate or indirect* possessor. [Author's italics.] The mediate possession is a sort of a spiritualized dominion which does not imply the material holding. The immediate possession is merely a holding or natural possession, *although well protected by injunctions*." (Italics ours.)

sought, by virtue of this lease contract, to transfer the material possession of the property to defendant. As to Torres Frau, in the absence of the sublease relationship created by the private agreement, Texaco had the holding or the direct and immediate material possession stemming from its recorded lease contract, and Torres Frau, as owner, could not grant the same material holding to appellee, nor can we acknowledge it, pursuant to the prohibition established by the aforecited § 374 of the Code.

■ In the absence of the relationship created by the private agreement between Texaco and appellee, González, Inc.—the record does not show that there was any—every act of appellee seeking to prevent the holding of the property and its possession and enjoyment by Texaco pursuant to the agreements and the clauses of the lease contract, constitute the acts of disturbance of a third party, against which Texaco has a cause of action pursuant to the possessory protection of § 375 and pursuant to the provisions of § 1450, aforecited. As of August 14, 1957 and on the date the complaint was filed Texaco had never ceased to hold the possession of the property, either the immediate or direct possession as lessee, or the mediate or indirect possession as sublessor as to the possession of those parties to whom it subleased the property.

It was agreed in the recorded lease contract that Texaco would enjoy the possession of the gasoline station with all its uses, accessories, buildings, and facilities devoted to said business, and it was specifically agreed that Texaco could place, install, fix, or bury in the leased property any kind of equipment, devices, tools, apparatus, or any other object, pumps, hydraulic hoisters, compressors, signposts, etc., without limiting the list and without considering that those devices were incorporated in the leased property. The alleged acts of disturbance by appellee are related to those objects, all of which, or part of which appellee threatened to remove from the property leased by Texaco.

The lessee may avail himself of an injunction. Even against its lessor and the owner. See: *Cepero v. Mora*, 42 P.R.R. 81 (1931); *Navedo v. Amato*, 70 P.R.R. 639 (1949); *Ferrer v. Gutiérrez*, 28 P.R.R. 425 (1920); *Fajardo Sugar, etc. v. Central Pasto Viejo, Inc.*, 41 P.R.R. 817 (1931).

The owner of the leased property, who during the lease has the superior civil possession, but only mediate and indirect, may avail himself of an injunction. *Serrano v. Heirs of Santos*, 24 P.R.R. 163 (1916).

■■ Any possessor may resort to injunction.[4] Against Torres Frau, the last owner, Texaco was an immediate and

---

[4] Castán remarks, *op. cit.* at p. 456:

"In our Code the system is different. Since § 446, as we have just seen, [§ 375 ours] grants protection *to every possessor*, and § 1.651 of the Procedural Law [§ 690 of our Code of Civil Procedure] deals with the *possession* or *tenancy*, it must be understood that injunctions are applicable to both and that they may be used by the possessor as owner, the mere occupant or present holder, the usufructuary, the pledgee, the obligee in a contract of antichresis, the person who enjoys the right to withhold, the lessee, the bailee, the depositary, and, in short, every person who under the technique of the Civil Code has the possession, whether natural or civil, as owner or in any other capacity." (Author's italics.)

Citing García Valdecasas, he agrees with the latter that "the immediate possessor as well as the mediate possessor may legally resort to injunction: if a third person disturbs or deprives the immediate possessor, mediate possessor of another, the immediate as well as the mediate possessor may resort to injunction . . . . The immediate possessor may legally resort to injunction not only against strangers, but also against the mediate possessor causing the damage. In turn the mediate possessor may direct the injunction against the immediate possessor if the latter disturbs his possession." P. 458.

Juan B. Vallet de Goytisolo in his aforecited essay on *La Concurrencia de Varias Posesiones Sobre Una Misma Cosa Inmueble*, 182 *Revista General de Legislación y Jurisprudencia* 545 et seq. (1947), maintains that the possessor of the property right as well as the holder of the thing, to defend themselves against each other from the immissions performed outside the limits of their respective *positions of fact*, may resort to injunction, and states: "We have repeatedly stated that pursuant to our Civil Code sanctioned by the case law, there is no doubt that a person who 'possesses a right,' although 'he does not hold the thing,' must be protected by injunctions. Well, the *possessor iure* has in our Law, in addition—if it may be stated thus—to the so-called mediate possession of the thing, the immediate and actual possession of the dominion

direct possessor as lessee. Insofar as the former could accept the private sublease clauses, Texaco was a mediate possessor as to him. As to defendant González, Inc., Texaco was an immediate possessor as lessee of the property. Even assuming that there was a private sublease relationship between Texaco and González, as a mediate possessor, Texaco could also defend its possession against González' tortious actions, such as the threats to remove its equipment from the property, since it was entitled to defend the possession of the right to possess granted to it by its original lease contract.

In the light of our provisions of positive law and of the applicable doctrine, and defendant's threatening acts of disturbance against plaintiff's material possession having been proved, the injunction should have been sustained.

The judgment appealed from dismissing the complaint for lack of cause of action at law is reversed, and the disturbance act having been proved another judgment will be rendered sustaining the complaint. Defendant-appellee will be ordered to pay $600 for attorney's fees in the trial court.

---

of said thing or of a superior real right over the same (usufruct, emphyteusis) limited by the other actual possessions over separate faculties of said thing. It is true that injunctions protect 'the possession as a fact' and the 'momentary disturbance,' no matter how or why it is possessed. And that, hence, in relation to the holding of the thing, they do not protect the *possessor iure* against the *possessor facti*; but on the other hand, they do protect him against the same holders of the thing to keep him 'in the actual possession of the property right' (or usufruct, or emphyteusis, as the case may be). Thus, the injunction will not be sufficient for the lessor, for example, to recover from the lessee the thing leased. *But it will suffice to preclude the latter from destroying the house he has rented, to fell trees, or to build on the leased property*; and to prevent him from converting his possession as lessee into a possession as owner." (P. 591.)